# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OCEANA, INC., <br><br> Plaintiff, <br><br> v. <br><br> **WILBUR L. ROSS** *in his official capacity as Secretary of Commerce, et al.*, <br><br> Defendants. | Case No. 17-cv-829 (CRC) |

## MEMORANDUM OPINION

The National Marine Fisheries Service designs management plans to promote the sustainability of particular species of ocean fish. Plaintiff Oceana, Inc. brought suit under the Administrative Procedure Act challenging the Service's management plan for one such species: the dusky shark. But before reaching the merits of that challenge, the Court must first resolve Oceana's motion to compel the Service to complete or supplement the administrative record with four categories of documents: (1) studies and other documents cited in the final Environmental Impact Statement supporting the Service's dusky shark management plan, (2) catch-related data from fishing vessel logbooks and third-party observer reports, (3) documents withheld by the Service under the deliberative process privilege, and (4) certain other extra-record studies and data. Having considered the parties' arguments and supporting evidence, the Court will order that the record be supplemented with a subset of the materials in the first category of Oceana's request as detailed further below. The Court will deny Oceana's motion in all other respects.

**I. Background**

The National Marine Fisheries Service ("Service") is a federal agency within the Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA").

Under the Magnuson-Stevens Act, the Service is responsible for preparing management plans for all "highly migratory" fisheries under its jurisdiction in the Atlantic. See 16 U.S.C. § 1854(g)(1).[1] These plans contain measures which are "necessary and appropriate for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." Id. § 1853(a)(1)(A). In order to protect against overfishing, in its management plans the Service sets an optimum annual yield for each fishery and species of fish. See 50 C.F.R. § 600.310.

In July 2016, the Service released a draft amendment—Amendment 5b—to its Highly Migratory Species Fishery Management Plan. A.R. 7080. Amendment 5b specifically addresses the overfishing and management of dusky sharks in the Atlantic. Id. Following a public comment period, the Service released a final version of Amendment 5b in February 2017. A.R. 7050. Oceana, Inc., an environmental and conservation organization, thereafter filed suit against Secretary of Commerce Wilbur Ross, NOAA, and the Service itself.

After receiving the Service's answer, the Court set a summary judgment briefing schedule. Oceana then filed a motion to compel the Service to complete and supplement the administrative record. In light of Oceana's motion, the Court stayed summary judgment briefing and held a hearing on February 2, 2018. It will now grant Oceana's motion in part and deny it in part, as detailed below.

---

[1] The Act defines a "fishery" as "one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics" and "any fishing for such stocks." 16 U.S.C. § 1802(13).

## II. Legal Framework

Under the Administrative Procedure Act ("APA"), the Court is directed to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, review of an agency's action under the APA "is to be based on the full administrative record that was before [the agency] at the time [it] made [its] decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). The administrative record consists of "all documents and materials that the agency 'directly or indirectly considered,'" no more and no less. Maritel, Inc. v. Collins, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993)). An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record." Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).

There are two situations in which a plaintiff may seek to add evidence or documents to the administrative record. First, a plaintiff may seek to include "extra-judicial evidence that was not initially before the agency" but that the plaintiff "believes should nonetheless be included in the administrative record." Univ. of Colo. Health at Memorial Hosp. v. Burwell, 151 F. Supp. 3d 1, 13 (D.D.C. 2015) (citation omitted); see also The Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009). Second, a plaintiff may seek to "include 'evidence that should have been properly a part of the administrative record but was excluded by the agency.'" Univ. of Colo., 151 F. Supp. at 13 (citation omitted); see also Cape Hatteras, 667 F. Supp. 2d at 114.

With respect to the first situation, a party may supplement the administrative record if she can "demonstrate unusual circumstances justifying a departure from th[e] general rule" against considering extra-record evidence. City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir.

3

2010) (quoting Texas Rural Legal Aid v. Legal Servs. Corp., 940 F.2d 685, 698 (D.C. Cir. 1991)); see also American Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008)). The D.C. Circuit has identified three such unusual circumstances: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information [is] needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative review so as to frustrate judicial review.'" City of Dania Beach, 628 F.3d at 590 (quoting American Wildlands, 530 F.3d at 1002).

The appropriate standard to apply in the second situation—where a party seeks to include evidence that was allegedly before the agency but nevertheless excluded from the administrative record—has been the subject of some confusion. See Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 317 n.7 (D.D.C. 2016); Univ. of Colo., 151 F. Supp. at 13; Cape Hatteras, 667 F. Supp. 2d at 113. This confusion has arisen because the term "supplement" "has been used synonymously to refer to both a circumstance in which a party argues that the administrative record does not actually reflect the materials that the agency had before it when it made its decision, and a circumstance in which a party seeks to add extra-record or extra-judicial information to the record that was concededly *not* before the agency." Univ. of Colo., 151 F. Supp. at 13 (emphasis in original); see also Oceana, 217 F. Supp. 3d at 317 n.7. The upshot is that it is unclear whether a plaintiff seeking to add evidence it has demonstrated was before the agency (and thus is properly part of the administrative record) must also show one of the three "unusual circumstances" from cases such as City of Dania Beach in order to prevail.[2]

---

[2] The D.C. Circuit has not clearly resolved this question because the key circuit cases—City of Dania Beach and American Wildlands—involved extra-record material, not material that was before the agency. See City of Dania Beach, 628 F.3d at 590 (seeking to add documents from prior rulemakings); American Wildlands, 530 F.3d at 1002 (seeking to add two letters from

4

The Court agrees with its colleagues who have not required that an "unusual circumstance" be demonstrated in such cases. After all, the administrative record properly consists of the materials before the agency and no more *nor less*. See Walter O. Boswell Memorial Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1989) ("The Supreme Court's formulation in Overton Park cautions against both under- and over-inclusiveness in the administrative record before a reviewing court."). If a plaintiff can show that a piece of evidence *was* before the agency at the time the decision was made—and thus that that evidence *is* part of the administrative record—it makes little sense to require that the plaintiff also show one of the three unusual circumstances before requiring the agency to add the properly-part-of-the-record evidence to the record. See, e.g., Univ. of Colo., 151 F. Supp. at 14. To hold otherwise would result in the Court reviewing agency action without the entire administrative record before it, contrary to what the APA directs, unless the plaintiff can make the heightened showing of an unusual circumstance.

Consequently, for a plaintiff to prevail on a motion to complete the record—that is, to add evidence that is properly part of the record but was excluded—she must only "'put forth concrete evidence' and 'identity reasonable, non-speculative grounds for [her] belief that the documents were considered by the agency and not included in the record.'" Charleston Area

---

scientists whose work the Service considered); see also Univ. of Colo., 151 F. Supp. 3d at 14 (discussing D.C. Circuit case law). Similarly, the case that the Service cites for the proposition that Oceana must prove the agency record is so inadequate as to frustrate judicial review in order to prevail on a motion to complete the record, Defs.' Opp'n Pl.'s Mot. Compel ("Defs.' Opp'n") at 9, involved extra-record documents. See Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 285 (D.C. Cir. 1981) (discussing the need to look to extra-record documents if there is "such a failure to explain administrative action as to frustrate effective judicial review" (citation omitted)).

Med. Ctr. v. Burwell, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citation omitted); see also, e.g., Univ. of Colo., 151 F. Supp. at 15; Cape Hatteras, 667 F. Supp. at 114.

### III. Analysis

Oceana seeks to add four categories of documents to the record: (1) studies and reports cited in the final agency Environmental Impact Statement for Amendment 5b (the "EIS"); (2) documents withheld from the record as privileged; (3) catch-related data from fishing vessel logbooks and third-party observer reports; and (4) extra-record data. The Court will grant Oceana's motion as to part of the first category of documents and deny it as to the rest.

### A. Studies and reports cited in the EIS

The first set of documents that Oceana seeks to add to the record, listed in Exhibit A of its motion, consists of studies, memoranda, and assessments that the Service cited in the EIS. See Mem. Supp. Pl.'s Mot. Compel Completion & Supplementation ("Pl.'s Mot.") Ex. A. These documents received one of three treatments in the EIS: (1) some were cited in the body of the EIS for a substantive proposition; (2) some were cited in the body of the EIS but only as a source of additional information that readers might wish to consult; and (3) some were cited solely in a list of references and not in the body of the EIS. Oceana argues that because all of these studies were cited somewhere in the EIS, they were clearly before the Service at the time it made its decision and therefore belong in the administrative record. Pl.'s Mot. at 10–11. The Court agrees in part.

*First*, there is a subset of documents listed in Oceana's Exhibit A that were cited substantively, *i.e.*, to justify a factual statement or assertion made in the EIS.[3] If a document was

---

[3] See, e.g., A.R. 7155 ("For example, from 1992-2000, dusky sharks were 8.5 times more common than a target species, the shortfin mako shark (*Isurus oxyrinchus*), in the pelagic

6

substantively cited, the Service clearly considered that document. After all, to know what the document said the Service had to at least read it, and by citing the document to justify a substantive factual proposition, the Service is purporting to have relied on the document and its contents. As such, these documents were before the Service and belong in the administrative record.

The Service's arguments to the contrary are unpersuasive. It contends, mainly, that the administrative record "need not include all references cited in an administrative record document, as a citation alone does not show that the source document was 'before' the agency decisonmaker." Defs.' Opp'n at 9. True enough. As the cases that the Service cites recognize, the mere mention of a document in the agency's decision or the record does not always mean, *ipso facto*, that the agency considered the document. See Franks v. Salazar, 751 F. Supp. 2d 62, 69 (D.D.C. 2010) ("[N]either the materials' purported relevance nor plaintiffs' references to *Safari Club* during the permitting process constitute concrete evidence that the Service considered the materials, either directly or indirectly."); WildEarth Guardians v. Salazar, 670 F. Supp. 2d 1, 6 (D.D.C. 2009) ("[T]he Court is not persuaded that a singular reference to the 1979 Petition in the background section of the 90-day finding is, by itself, sufficient to support supplementation of the record. Rather, as set forth above, Plaintiff must provide reasonable, non-speculative grounds demonstrating that the 1979 Petition itself was *considered*, either directly or indirectly, by the Secretary.").

---

longline fishery (Beerkircher et al. 2002)."); A.R. 7184 ("The most commonly used hook was the 18.0 circle hook used on 42.4 percent of the hauls (Enzenauer et al., 2016)."); A.R. 7255 ("There is no evidence that artificial lures or flies frequently cause gut-hooking and associated post-release mortality (Muoneke and Childress 1994; Brownscombe et al. 2017).").

7

But not all citations or references to a document in an agency decision are the same. An agency's decision to rely on a document to support a factual assertion is different from its mere mention of a document's existence. The use of a document to justify an assertion or proposition indicates that the Service consulted and thought about—and therefore considered—that document directly when issuing Amendment 5b. Indeed, one of the cases that Oceana relies on explicitly distinguishes a situation where an agency merely mentions a document from one where the agency cites a document for a substantive proposition. See WildEarth Guardians, 670 F. Supp. 2d at 7 (denying supplementation of the record with "a document that was mentioned— *but not substantively cited to*—on one occasion" in the agency decision (emphasis added)); id. at 6 ("Although *citation* to a document may . . . indicate consideration of the contents of the document, the fact that a document is merely mentioned does not lead to the same conclusion." (emphasis added)). The former may be insufficient, on its own, to show consideration, but the latter is not.

The Service next argues that "duplicative documents and references used for background information need not be included." Defs.' Opp'n at 10. But if the Service considered such documents, then they do need to be included: the administrative record consists of all such documents *and no less*. The key question is whether the Service considered the duplicative documents or background references. With respect to those documents cited substantively, the Service appears clearly to have consider them and they therefore belong in the administrative record.

*Second*, there is a subset of documents that are cited in the body of the EIS, but solely as a source of further information for the reader rather than to justify a factual proposition.[4] In contrast to the first category of documents, the Court concludes that Oceana has not met its burden to show these belong in the administrative record. The use of a document as a source for further reference is more akin to the sort of mere mention that is typically insufficient to prove the document belongs in the administrative record. There is nothing to indicate that the relevant decisionmakers actually thought about or even had these documents before them in the process of making a decision—it may well be that a staffer included a citation on her own initiative. In other words, the decision to cite a document as a further reference does not indicate that the contents of that document were ever used, discussed, or consulted by decsionmakers when determining the substance of the agency's decision. Thus, the Court has not been presented with concrete evidence that these documents were considered by the agency and will not require their addition to the record.

*Third*, there is a subset of documents that are never cited in the body of the EIS, but are included in the list of references appended to the end of each EIS chapter.[5] While this is a closer call than either of the previous two sets of materials, the Court ultimately concludes that these documents, too, belong in the administrative record.[6] While these documents are not expressly

---

[4] See, e.g., A.R. 7209 ("For detailed information about HMS tournaments, please see . . . the 2011 SAFE Report (NMFS 2011a) . . ."); A.R. 7211 ("Community profile information along with demographic information from the 1990, 2000, and 2010 U.S. Census can be found in the 2011 and 2012 SAFE Reports (NMFS 2011a; NMFS 2012).").

[5] See, e.g., A.R. 7237 (including Cortés & Neer 2002 and Babcock et al. 2003 in the references list for EIS chapter 3, though neither are cited in the body of chapter 3).

[6] Every document that is cited in the body of the EIS also appears in a list of references. As to those documents that appear in a reference list and are also cited substantively in the text to

9

relied on for a substantive factual proposition, their inclusion in the list of suggests that the Service consulted their contents in the process of making the EIS. Or, at a minimum, nothing about their inclusion in a reference list suggests otherwise. And in the absence of any indication or explanation to the contrary—for instance, the fact that the documents were only cited as a source of extra information—the Court concludes that the inclusion of the documents in a reference list is a concrete, non-speculative basis upon which to conclude that the Service considered them, directly or indirectly, in developing the EIS. These documents, therefore, belong in the administrative record as well.

B. Fishery observer and logbook data and reports

Oceana next seeks to add data regarding dusky shark mortality and bycatch.[7] Pl.'s Mot. at 11. Its request touches upon two sets of data that the Service maintains: observer reports and logbook reports. Observer reports are filed by impartial observers aboard fishing vessels who document the conditions and events during their time there. See Defs.' Opp'n at 15. In turn, logbook reports are maintained by the captain of a vessel and include information about the

---

justify a proposition (thereby falling within the first category), the Court has already held they need to be added to the record. As to those documents that appear in a reference list and were cited in the text solely for additional information (thereby falling within the second category), the Court has already held they were not considered and need not be added to the record. This third category of documents solely addresses those that appear in a reference list and were *not* cited in the text at all.

[7] "Under the Magnuson-Stevens Act, 'bycatch' has a very specific meaning: 'fish which are harvested in a fishery but which are not sold or kept for personal use, and includes economic discards and regulatory discards. Such term does not include fish released alive under a recreational catch and release fishery management program.'" A.R. 7214 (quoting 16 U.S.C. § 1802(2)). The Service's fishery conservation and management measures "shall, to the extent practicable, minimize bycatch and minimize the mortality of bycatch that cannot be avoided." Id. (citing 16 U.S.C. § 1851(a)(9)).

10

vessel and its route, the number and type of fish caught, the type of tackle and gear used, and the ultimate disposition of the fish caught. Schulze-Haugen Decl. ¶ 18.

In the process of formulating Amendment 5b, the Service consulted databases that compile the data from these logbook and observer reports. Id. ¶¶ 15, 18. The Service queried the underlying databases for specific information, such as how many dusky sharks were observed caught. Id. It then aggregated this data, considered it in developing Amendment 5b, and reported the aggregate data in the final EIS. Id.; see also, e.g., A.R. 7090, 7091 (data tables). Counsel for the Service stated at the hearing that the agency put the data it considered into the tables in the final EIS.

Oceana seeks to add the disaggregated version of the data reflected in the tables in Amendment 5b to the record.[8] In order to prevail, Oceana must provide concrete evidence and a non-speculative basis for concluding that the requisite decisionmakers considered the *disaggregated* data as opposed to the aggregated data. After all, an agency staffer could have queried the databases, compiled the relevant data, aggregated it, and then presented the aggregated figures to higher-up agency personnel and decisionmakers to consult or use when formulating Amendment 5b. Put another way, the fact that the data was at one point disaggregated does not necessarily mean that that disaggregated data was consulted, thought about, or even seen by the agency decisionmakers. Thus, the mere fact that the Service used the raw databases to generate aggregated data to use in the final EIS does not alone provide a

---

[8] To the extent that Oceana seeks access to other data in the databases that was not pulled from the database and analyzed—for instance, data regarding fish species other than the dusky shark—it presents no evidence to indicate the Service considered any of this data and thus supplementation of the record with the entire database would be inappropriate.

11

concrete, non-speculative basis upon which to conclude that it considered the disaggregated figures or the entire raw dataset.

Oceana further contends that more data needs to be added to the record because the tables in the EIS do not contain the full spectrum of data available to the Service. For instance, it notes that some of the tables only reflect observer data and not logbook data. Pl.'s Reply at 8. Other tables, it says, reflect data from only some fisheries and not others. Id. at 9. But the mere fact that other data was available to the Service does not mean the Service considered the underlying data.[9] Nor does the fact that the Service considered *using* the data mean that it considered the *underlying data*. Cf. A.R. 7260 (Service explaining why it did not look at data on landings of designated target species reported in Coastal Fisheries Logbook). The Service can determine which datasets to consult and utilize in its analysis without consulting or utilizing the underlying data in that set. And if the Service decisionmakers did not even look at, let alone consult or utilize the underlying data, then they have not considered it.

In sum, the mere fact that the Service had data available to it does not provide a concrete, non-speculative basis upon which to conclude that it considered that available data. Nor does the fact that the Service considered and used the aggregated data that already appears in the EIS provide a concrete, non-speculative basis upon which to conclude that it considered the

---

[9] The Court will note that in one section of the final EIS, the Service explained that it used both logbook and observer data in the Predraft to Amendment 5b but used only logbook data in the final EIS. See A.R. 7259. But since the Predraft is in the record already, any data that appears there but not in the final EIS is also already in the record.

underlying raw or disaggregated data. Oceana has therefore failed to meet its burden to prove these datasets belong in the record.[10]

C. Reviews, comments, emails, and drafts

Next, Oceana challenges the Service's withholding of certain documents from the administrative record pursuant to the deliberative process privilege. See Pl.'s Mot. at 19–23, id. Ex. C. Courts in this District have long held that materials that fall within the scope of the deliberative process privilege are not part of the administrative record. See, e.g., Am. Petroleum Tankers Parent, LLC v. United States, 952 F. Supp. 2d 252, 265 (D.D.C. 2013).

The justification for such a limitation is two-fold. First, "[d]eliberative documents are excluded from the record because, when a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action 'is judged in accordance with its stated reasons.' '[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.'" Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Services, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (second alteration in original) (quoting In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency, 156 F.3d 1279, 1279 (D.C. Cir. 1998)). Second, protecting internal, deliberative materials helps "enhanc[e] the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Oceana, 217 F. Supp. 3d at 319 (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9

---

[10] Oceana contends that even if this data is not record evidence, it should be added to the record as extra-record evidence. For the reasons discussed more below in the section dealing with Oceana's other extra-record evidence, the Court finds that Oceana fails to show any unusual circumstance requiring supplementation of the record with this data.

13

(2001)). After all, "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id. (quoting Klamath Water, 532 U.S. at 9).

In determining whether a document falls within the scope of the deliberative process privilege, courts in this District apply the same test used in Freedom of Information Act ("FOIA") or common law privilege cases. See, e.g. Am. Petroleum, 952 F. Supp. 3d at 265. To fall within the scope of the privilege a document must meet two requirements: (1) "the material must be predecisional" and (2) "it must be deliberative." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). A document is predecisional "if it was generated before the adoption of an agency policy" and it is deliberative "if it reflects the give-and-take of the consultative process." Am. Petroleum, 952 F. Supp. 2d at 265 (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006)).

*1. Documents PR25 and PR26 from the Service's privilege log*

The Service prepared a log listing the documents it withheld from the administrative record on the basis of privilege. It included documents withheld under the deliberative process privilege on the ground that they "help form an understanding in the agency's decisionmaking process and . . . the thought process the agency undertook in developing Amendment 5b." Schulze-Haugen Decl. ¶ 24. Oceana first contends that the Service improperly withheld two documents on the log pursuant to the deliberative process privilege. The first, PR25, is described in the privilege log as "Southeast Fisheries Science Center review of Amendment 5b Final Environmental Impact Statement (FEIS), for internal agency discussion." Pl.'s Mot. Ex. L, at 19. The second document, PR26, is described as "Southeast Fisheries Science Center review of comments and responses of Amendment 5b . . . for internal agency discussion." Id.

At first blush, both of these documents seem to meet the requirements of the deliberative process privilege. Both are clearly predecisional: they are dated January 2017 and thus precede the final EIS issued in February 2017. They also appear to be deliberative. The Southeast Fisheries Science Center is a "'scientific agency' within" the Service, and its comments thereby contain suggestions and feedback from agency staff on a preliminary draft of an agency decision. Schulze-Haugen Decl. ¶ 21. Such "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are widely recognized as falling within the scope of the privilege. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

Oceana nonetheless contends that these documents are not protected because they contain factual material. Pl.'s Mot. at 18. But the so-called "fact/opinion" dichotomy is not as clearly delineated as Oceana contends. As the D.C. Circuit has explained in the FOIA context, "the legitimacy of withholding [under the deliberative process privilege] does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011). Margo Schulze-Haugen, a Service employee, has attested that the two comment documents at issue "are not limited to purely factual or scientific information, as policy issues are often deeply intertwined with the scientific issues, particularly given the uncertainty surrounding data and the various options presented to and available to the agency for consideration." Schulze-Haugen Decl. ¶ 21. In determining how to frame and interpret the data available to it, the Service exercises discretion in the selection and organization of facts. Comments on a draft concerning these issues—such as those here, according to Schulze-Haugen—fall within the scope of the

15

deliberative process privilege. The Service therefore properly asserted the privilege over these two documents.

### 2. *Other unspecified documents*

Oceana also argues that the agency withheld "an unspecified amount of material, including drafts, emails, and other internal documents, that it characterizes as 'deliberative' which the agency believes are therefore not part of the record in the first instance." Pl.'s Mot. at 23–24. The Service contends that these documents would be protected under the deliberative process privilege. Defs.' Opp'n at 25–26. However, when addressing this category of documents, Oceana does not contest that some record materials are properly withheld under the deliberative process privilege. See, e.g., Pl.'s Mot. at 24. Nor does Oceana contest the applicability of the two-part test from FOIA and common law privilege cases to administrative record ones. See id. at 17 n.5. Instead, Oceana appears to take issue solely with the wholesale nature of the Service's withholding here.

While Oceana may be correct that the Service cannot wholesale withhold a category of documents based only on their form—*e.g.*, all memos from junior agency personnel to senior agency personnel—it may do so if the category of documents withheld by definition meets the requirements of the deliberative process privilege—*e.g.*, all predecisional and deliberative memos from junior agency personnel to senior agency personnel. And to justify this withholding, the Service must simply represent that those documents meet the requirements of the deliberative process privilege. After all, if a document meets the test for the deliberative process privilege, then the agency has necessarily shown that its release would undermine the interests the privilege is designed to protect.

The Court will thus deny Oceana's motion with respect to this set of documents for two reasons. First, Oceana fails to identify any specific documents or provide concrete evidence and non-speculative grounds for the conclusion that these specific documents were considered by the agency. In light of the presumption of regularity that is afforded an agency's certification that it compiled the complete record, it is not enough for Oceana to simply contend, as it does here, that the agency must add all the documents it considered. By failing to point to specific documents and specific grounds on which to conclude those documents were considered, Oceana fails to meet its burden.

Second, to the extent there are other internal, deliberative (and predecisional) documents that the agency did consider, those documents would be protected by the deliberative process privilege and thereby should not be added to the record. As noted earlier, internal and deliberative emails and drafts of agency decisions are the sort of materials often protected by the deliberative process privilege. For this reason as well, the Court will deny this aspect of Oceana's motion.[11]

D. <u>Extra-record documents</u>

Finally, Oceana seeks to add a set of data on dusky shark bycatch and mortality from various fisheries other than the highly migratory fishery (where dusky sharks are presumably most found). Oceana concedes that this is extra-record data. <u>See</u> Pl.'s Mot. at 27–28 ("Despite this evidence, the Fisheries Service *did not consider* mortality data from non-HMS fisheries . . . . The observer and logbook data that Oceana seeks to add to the administrative record *as extra-*

---

[11] Nor will the Court require the Service to provide a privilege log specifically listing this alleged category of records, for the reasons articulated by other judges in this District. <u>See, e.g.</u>, <u>Stand up for California! v. U.S. Dep't of Interior</u>, 71 F. Supp. 2d 109, 123–24 (D.D.C. 2014); <u>Blue Ocean Institute v. Gutierrez</u>, 503 F. Supp. 2d 366, 372 (D.D.C. 2007).

*record evidence* are listed in Exhibit D to the Hardy Declaration." (emphases added)). Therefore, Oceana must show that one of the three unusual circumstances applies. It argues that two are present: (1) the agency deliberately or negligently ignored possibly adverse documents and (2) the reports are background information needed to determine if the agency has considered all the relevant factors. However, Oceana has not demonstrated that either circumstance is present here.

With respect to the first alleged unusual circumstance—the agency deliberately or negligently ignored potentially adverse evidence—the D.C. Circuit has recently explained that a party must show evidence of bad faith on the part of the agency to carry its burden. See Dist. Hosp. Partners, L.P. v. Burwell, 786 F.3d 46, 54 (D.C. Cir. 2015) ("Meeting this exception requires a 'strong showing of [agency] bad faith'. . ." (citation omitted)).[12] But Oceana provides no indication or evidence of bad faith. Nor does it explain *how* these reports are potentially adverse. Thus, Oceana does not carry its burden of showing this first unusual circumstance is present.

This leaves the second circumstance—that the reports are background information the Court will need in order to determine if the agency considered all the relevant factors. But it is not at all clear that the Court needs to have this data in front of it to determine whether the

---

[12] Oceana contends that it need not show bad faith to meet this first unusual circumstance, arguing that the D.C. Circuit "has been inconsistent as to whether bad faith is part of this element or is a separate circumstance" and that the case on which District Hospital itself relies treated bad faith as a separate unusual circumstance. See Pl.'s Mot. at 24 n.14. But as Oceana concedes, District Hospital "described bad faith as a necessary component of the adverse documents exception." Id. To the extent that District Hospital is inconsistent with prior D.C. Circuit decisions, that is a problem to be resolved by the Court of Appeals, not by this Court. In the meantime, this Court is bound to follow District Hospital, which clearly states that bad faith is a required element of the first unusual circumstance Oceana asserts.

Service should have consulted it. After all, the parties can adequately argue about whether the Service should have considered this data without the Court having the precise figures in the administrative record. See Midcoast Fishermen's Ass'n v. Gutierrez, 592 F. Supp. 2d 40, 46 (D.D.C. 2008) ("Supplementing the record with the bycatch data from an earlier period will not provide any 'background' useful to resolving the case. No matter what 'background' is provided, the issue remains the same: did the agency err by only considering the data that it did?"). Consequently, this data is not necessary for the Court to be able to address Oceana's argument on the merits and the second unusual circumstance is not present. Because Oceana has not demonstrated the presence of an unusual circumstance, the Court will deny its request to supplement the record with this extra-record information.

## IV. Conclusion

For the foregoing reason, the Court will grant in part and deny in part Oceana's motion. The Service must complete the record with the documents listed in Oceana's Exhibit A excluding the first three documents listed (the 2008, 2011, and 2012 SAFE reports). However, the Court will not require the Service to add any of the other documents to the record. A separate Order will accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 21, 2018